## 53617. TRADING ASSOCIATES, INC. v. TRUST COMPANY BANK.

MARSHALL, Judge.

The plaintiff checking account customer brought this action against its bank, defendant, alleging that the plaintiff, on four dates in October, 1975, had deposited to its account five checks, totaling $1,550, drawn on the account of one Clara C. Burrell with the defendant bank. Thereafter the defendant bank debited the plaintiff's account in that amount, but none of the checks was returned to the plaintiff within the time prescribed by the "Uniform Negotiable Insturments [sic] law of Georgia." (Quaere, whether it was intended to be alleged that the plaintiff was not given notice of the dishonor, there being no statutory obligation to return dishonored checks to the depositor.) Finally, it was alleged that, on December 23, 1975, the defendant bank, without the plaintiff's consent, debited the plaintiff's checking account in the amount of $1,013.94, for which the plaintiff corporation was not liable. Plaintiff sought the return of the debited amounts.

On February 27, 1976, the defendant filed defensive pleadings, including a motion to dismiss for failure to state a claim upon which relief can be granted, which motion was denied after hearing on October 21, 1976. At the bench trial, the plaintiff read its interrogatories and the bank's answers into the record, then summoned his only witness, Mr. Jones, to the stand. After direct and cross examination of the witness, the judge granted the bank's motion to strike the testimony as hearsay, and entered judgment in favor of the defendant bank. The plaintiff appeals from the adverse judgment, enumerating as errors the striking of his witness' testimony and the dismissal of his case before he had rested. *Held:*

Even excluding the testimony of the plaintiff's witness, the answers to the interrogatories showed that the amounts of four of the checks in question were debited

from the plaintiff's account after 2, 4, 6 and 10 days, respectively, the checks apparently having been forged. (The fifth check was cashed but later debited with the date of debiting not appearing.) This at least raised a strong probability that the plaintiff was not timely notified of the dishonoring of at least some of the checks as required by the statutes hereinafter set out.

Code Ann. § 109A-4—211 (2) (Ga. L. 1962, pp. 156, 295) provides as follows: "If *before its midnight deadline* [i.e., 'midnight on its next banking day following the banking day on which it receives the relevant item.' Code Ann. § 109A-4—104 (h) (Ga. L. 1962, pp. 156, 284; 1963, pp. 188, 192; 1974, p. 618)] the collecting bank properly dishonors a remittance check or authorization to charge on itself . . . , the collecting bank is not liable to prior parties in the event of the dishonor of such check, instrument or authorization." (Emphasis supplied.) Code Ann. § 109A-4—213 (4) (b) (Ga. L. 1962, pp. 156, 298) provides as follows: "Subject to any right of the bank to apply the credit to an obligation of the customer, credit given by a bank for an item in an account with its customer becomes available for withdrawal as of right . . . in any case where the bank is both a depositary bank and a payor bank and the item is finally paid [i.e., the customer's account is credited], — at the opening of bank's second banking day following receipt of the item." "Notice of dishonor may be given to any person who may be liable on the instrument . . . Any necessary notice must be given by a bank before its midnight deadline . . ." Code Ann. § 109A-3—508 (Ga. L. 1962, pp. 156, 272). "Delay by a . . . payor bank beyond time limits prescribed or permitted by this Act or by instructions is excused if caused by interruption of communication facilities, suspension of payments by another bank, war, emergency conditions or other circumstances beyond the control of the bank provided it exercises such diligence as the circumstances require." Code Ann. § 109A-4—108 (Ga. L. 1962, pp. 156, 287). See also Code Ann. § 109A-4—302 (Ga. L. 1962, pp. 156, 301).

The above statutes apply to the defendant bank, as both the depositary and collecting bank. The plaintiff introduced evidence which might indicate that the

defendant bank had dishonored some or all of the checks deposited, beyond the "midnight deadline." The trial judge's premature entry of judgment for the bank deprived the plaintiff of the opportunity of establishing a prima facie case of a proper deposit and an improper debit, with the resultant effect of shifting the burden to the bank of going forward and showing that it had acted within a reasonable time in debiting the plaintiff's account without the statutorily-required notice within the 24 hours following the day of the deposit.

The record does not demand a finding that the plaintiff had rested its case at the time the court entered the judgment adverse to it. Rather, the plaintiff was engaged in redirect examination of its witness. The court struck the testimony of this witness on the ground that it was hearsay, and apparently on the further grounds that the bank had a "reasonable time," rather than until the "midnight deadline, in which to discover any deficiency in the checks, and that the plaintiff's remedy was against the owner of the account on which they were drawn (Clara C. Burrell).

As to the testimony of the plaintiff's witness, some, but by no means all, of it was hearsay. He testified as to his own knowledge of the signature cards regarding the proper authority to withdraw funds from the plaintiff's account, which was relevant and material as to whether the checks were drawn by an authorized party. The witness should have been permitted to testify concerning matters as to which he was competent to testify.

Additionally, the complaint raised the issue of the defendant's alleged unauthorized debiting of the plaintiff's account. Although the defendant's answer to one of the plaintiff's interrogatories was that the defendant had verbal authorization to debit the account, the plaintiff should have been permitted to introduce evidence as to this issue, and the defendant as well.

The case having been tried under erroneous principles of law, the judgment of the trial court for the defendant is reversed and a retrial of the case in accordance with this opinion is ordered.

*Judgment reversed with direction. Deen, P. J., and Webb, J., concur.*

ARGUED MARCH 3, 1977 — DECIDED MAY 6, 1977.

*George G. Finch,* for appellant.
*Michael N. Mantegna,* for appellee.